## Dougherty *versus* Stephenson.

1. The executors of a decedent, who has made an entire contract, and died before it was completed, may excuse the other party from the full performance of it, and in that event he may recover from the estate for the work already done.

2. Where evidence is given of a fact, whether the evidence as to it be clear or slight, though the Court may express an opinion upon it, the evidence should be submitted to the jury.

ERROR to the Common Pleas of *Montgomery county.*

This was an action on the case by David Stephenson *v.* Dougherty and Smith, executors of the will of Abraham Kunzie, deceased, surviving partner of John Farr, deceased.

For a period immediately prior to March 1, 1847, John Farr & Abraham Kunzie were partners, carrying on the business of smelting iron ore, at Spring Mill, in the county of Montgomery; during a part of which period the plaintiff, by himself and workmen, dug iron ore for the said Farr & Kunzie; and also, at their instance, examined and proved the ground with a view to find iron ore by sinking shafts and running drifts.

About February 1, 1847, after the ground had been thus proved, the plaintiff agreed with Farr & Kunzie to take out of the ground, as it was then, 4000 tons of iron ore; and for each ton taken out and put on the bank, he was to receive $1.12½.. Plaintiff immediately after commenced operation under this agreement, and continued working until about the 1st of March, 1847, *when John Farr died;* by which time very little if any ore had been taken out under the agreement.

After Farr's death, Abraham Kunzie carried on the business for awhile for the benefit of himself and the estate of Farr, till 10th July, 1847, when D. Reeves was taken in as a partner.

The *plaintiff* proceeded under his contract *after Farr's death,* until in July, 1848, when Abraham Kunzie died, by which time about 1200 tons of ore had been taken out.

The action was brought to recover for taking out ore under this agreement, and also for work alleged to have been done *before and after Farr's death,* not included in this agreement.

August 4, 1849, a declaration was filed with special counts on the said agreement, and also the common counts for work done, &c. Pleas, *non assumpsit* and payment.

On the part of the plaintiff, for the purpose of excusing him for not taking out the whole 4000 tons as per agreement, it was offered to prove by Peter Righter what the executors of Abraham Kunzie said relative to plaintiff stopping work. On the part of defendants, objection was made to evidence of anything said or done by the executors to induce the plaintiff to cease, or not to proceed to

[Dougherty v. Stephenson.]

the fulfilment of his contract; it being alleged that the executors had no power to stop him. The Court overruled the objection, and admitted the evidence, and the defendant's counsel excepted.

The witness testified that the plaintiff went to the executors to see whether they would settle with him, or let him go on and do the work. Dougherty made reply that he had better bring a suit; that he would advise him, if he was his own brother, to bring suit to recover his claim. Stephenson offered to go on with the work; he waited for nearly a year to go on with the work. They told him they had no authority for him to go on, and he should bring his suit.

The admission of this testimony was the *first* error assigned.

On part of the plaintiff it was also offered to prove by *John* Righter, a conversation between plaintiff and the executors of Kunzie, relative to non-completion of said contract. Objected to. The Court admitted the testimony, and the defendant's counsel excepted.

The witness said he was present when Stephenson asked the executors for permission to go on. Dougherty said if he was his own brother he would advise him to sue.

The admission of this testimony was the *second* error assigned.

Krause, P. J., charged the jury, *inter alia*, "that if the evidence was believed, the contract was an entire one; and the plaintiff must show that he performed all that the contract required, or that he was excused from the performance of it. That on the latter question there was evidence in the testimony of Righter, that he, as Kunzie's clerk, stopped the plaintiff from working; and afterwards the executors of Kunzie told him they had no authority for him to go on, and advised him to bring suit. That if the executors prevented the plaintiff from going on to execute the contract, if there was such a contract, he offering to go on, the plaintiff could recover for the ore he threw out."

As to the claim for stripping the soil, drifting, &c., he observed, that if the plaintiff did such work, and was to be compensated for it independently of the contract before referred to, depended on the testimony; and if the contract was, that the plaintiff was to be paid for the stripping, and also for taking out the ore in addition, he was to be allowed accordingly. He said, "it is not much insisted on, that the plaintiff was to drift and shaft and throw out the ore for $1.12½, and *it is not the view of the Court that that sum included the shafting and drifting.* But that is not a question for the Court, but exclusively for the jury to determine from the evidence."

Verdict was rendered for the plaintiff for $1526.83.

It was assigned for error:

[Dougherty *v.* Stephenson.]

1. The Court erred in admitting the evidence mentioned in the first bill of exceptions.

2. The Court erred in admitting the evidence mentioned in the second bill of exceptions.

3. The Court erred in charging the jury, in relation to the special contract, that the plaintiff had adduced evidence to show that he had offered to perform his part of the contract, and was prevented from so doing by the defendants; there being in fact no such evidence for the consideration of the jury.

4. The Court ought to have instructed the jury that the evidence showed a voluntary abandonment of the special contract on the part of the plaintiff, and that he was therefore not entitled to recover for anything done in pursuance of said contract.

5. The Court erred in submitting to the jury the question whether the $1.12½ per ton, for getting out ore under the special contract, included the stripping or not, as the whole evidence on the subject showed that it did, and there was no evidence to the contrary.

*Mulvany*, for plaintiff in error.—It was contended that the action of the executors did not excuse the plaintiff from performing his contract: 1 *Wharton* 71, Fritz *v.* Thomas; and that the evidence admitted should not have been received.

Also, that there was no such evidence of performance, or readiness to perform, on the part of the plaintiff, as would enable him to maintain the action against the executors. It was submitted, that if all that was testified to as having been said by Dougherty was true, that it was left *optional* with the plaintiff to resume operations or not: that nothing was said or done by Dougherty to prevent the plaintiff from proceeding with the work. The testimony of *Peter* Righter should have been overruled, on the ground that Dougherty, as executor, had no right to release the plaintiff from his contract.

As to the 5th assignment, it was contended, that the whole evidence showed that the $1.12½ cents per ton was to include both the digging the ore and the stripping off the ground over the ore.

*Fornance* and *Rich*, for defendants.—It was contended that the effect of the testimony of Peter and John Righter was to excuse and release Stephenson from performing the entire contract, and that it was properly admitted and submitted to the jury. The plaintiff, however, might have proceeded with the work had he chosen to do so, under the disadvantage of not having the ore mined paid for and hauled out of the way as it was mined, and as the contract provided for; but he chose to accept of a release from one of its stipulations—the mining of the residue of the quantity contracted for.

As to the allegation of want of power, by the executors, to re-

[Dougherty v. Stephenson.]

lease or excuse performance, it was observed, that the suit is not brought *on a contract with the executors,* but on that made by the decedent; and it was contended that it was in the power of the executors, with the consent of the opposite party, to abandon or release a part of the contract. That executors are bound to do the best they can for the estate, and that they are not responsible for the unfavorable consequences of the exercise of their discretion, unless it be accompanied with negligence so gross as to raise a presumption of wilful misconduct: 4 *Watts* 177, Dillebaugh's Estate; 4 *Barr* 140.

That the question of negligence or misconduct can be raised only when the executors came to account with the legatees or heirs.

As to the 3d assignment, it was submitted that there was sufficient evidence as to the plaintiff having been excused from performance of his contract to be submitted to the jury. The Court is not to give a legal interpretation to the words of a witness, and say, whether, in point of law, they sustain the allegation of fact: 1 *Pa. Rep.* 383, Sidwell v. Evans; 4 *Watts* 409. The testimony of Peter Righter, that he stopped the work at the request of Mrs. Kunzie, was an important fact in connection with the fact that the operations at the furnace were never resumed by the executors of Kunzie after his death, and that his executors, under the terms of his will, were bound to lease the property, and also in connection with what the executors said or did when the plaintiff called on them to see whether he should go on with the work: 10 *Watts* 107. Contracts may be abandoned otherwise than by words; the conduct of the parties and their relative situations are to be considered: 3 *Harris* 136, Grove v. Donaldson.

As to the 4th specification, the charge was right.

5. It was contended, that the searching for ore by sinking shafts, and by drifts from one shaft to another, was *independent* of the raising of ore; and that, *after the mine was thus proved,* and it was ascertained that there existed a large body of ore, the contract to raise 4000 tons of ore, at $1.12$\frac{1}{2}$ per ton, was made. More ground was stripped than was necessary to take out 1200 tons, which was all the ore that was taken out; and it was testified by Peter Righter, that the reason of so much ground being stripped was, that Kunzie requested plaintiff to do so. Another witness testified that Kunzie told Stephenson that he wanted *no more ore,* but directed him to go to stripping. The Court charged that, if the plaintiff did so, and was to be compensated for it, independently of the contract for taking out ore, he was entitled to recover for it.

The opinion of the Court was delivered by

BLACK, C. J.—In the 5th specification it is assigned for error that

[Dougherty *v.* Stephenson.]

the Court submitted a certain question to the jury. What else could have been done? It was a matter of pure fact; it was proved (if proved at all) by the oral testimony of witnesses, and it was pertinent to the issue. The judge had no right to decide it himself, though he might have given his opinion if he had seen proper. The clearness and force with which the fact is established does not alter the rule.

There was evidence which went to show that the plaintiff engaged to dig a certain quantity of iron ore for the defendant's testator at a certain price; that before the work was done, the employer died, and that his executors afterwards did what would have amounted to a rescission of the contract, if it had been done by the testator himself. The four first specifications, therefore, are all involved in what we consider the main point of the case, namely, whether the personal representatives of a decedent who has made an entire contract, and died before it was finished, can, by any act of theirs, excuse the other party from the full performance of it, so that he may recover for the work already done.

Executors or administrators may not create a new cause of action against the estate whose interest they are charged with, nor revive an old one, barred by the statute of limitations; but they may adjust an existing claim by a fair compromise, or arrange the business in their hands, so as to make the most of the assets. They cannot do what must result in injury to their trust, except upon their own proper responsibility, and every one who deals with them is bound to know it; but for all they do in the performance of acts required by the interest of the estate, they are answerable in their official character.

In the present case, the executors did not create the cause of action, but allowed it to be rescinded to a certain extent. They did not increase the debts of the estate, but diminished them.

Where a man has an unfinished contract at the time of his death, it is absolutely necessary that his executors or administrators should have the power to agree with the other contracting party, that the work may be stopped. Otherwise the estate might be utterly ruined.

It often happens (as perhaps it did here) that a contract, of which the full performance would have been useful and profitable to the decedent himself, is rendered by his death totally valueless to his family and his creditors. It cannot be that any rule of law exists which would bind such an intolerable burden on the back of an estate without the possibility of relief, and that too when everybody concerned is willing that relief should be given. We think the executors had a right to determine whether the remainder of the work should be done or not. The plaintiff did well in adopting the advice they gave him, to bring suit for the labor he had already

[Dougherty v. Stephenson.]

performed, and in treating their advice to sue as a virtual rescission of the contract.

Did not the death of the defendant's testator itself rescind the contract, and give the plaintiff a right of action for what he had done, without more? This point was not made in the Court below, nor argued here, and has therefore not been taken into consideration.

Judgment affirmed.